**Jose Alejandro GALLEGO, Petitioner,**

v.

**Luis SPENCER, Respondent.**

**No. CIV.A. 03–11095WGY.**

United States District Court,
D. Massachusetts.

Feb. 5, 2004.

Eva M. Badway, Attorney General's Office, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

Jose Alejandro Gallego ("Gallego") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 1999 convictions in the Massachusetts Superior Court sitting in and for the County of Middlesex upon four counts of trafficking in cocaine and three counts of distribution of cocaine. Gallego's petition raises two grounds for relief: (1) that his trial counsel provided him with ineffective assistance, in violation of his Sixth Amendment right to counsel; and (2) that his convictions were obtained by a violation of his Fifth Amendment privilege against self-incrimination. Pet. [Doc. No. 1] at 5.

Gallego's arrest on March 14, 1997 was the result of an undercover narcotics investigation carried out by the Middlesex County Narcotics Unit, focusing on 129 Perkins Street, Apartment 7, in Somerville, Massachusetts. Resp't Supp. Ans.,

Ex. 3 at A84. Prior to trial, Gallego and the Commonwealth stipulated to the following facts: From January 1, 1997 through March 14, 1997, Gallego lived at 129 Perkins Street, Apartment 7, in Somerville, Massachusetts. *Id.* On February 26, March 6, March 13, and March 14, 1997, Gallego made hand to hand sales of cocaine to undercover Trooper Bryan Joyce in the amounts of 2.84 grams, 2.21 grams, 2.96 grams, and 25.49 grams, respectively. *Id.* at A84–A88. The parties also stipulated that on each of these occasions, Gallego was observed leaving 129 Perkins Street and walking to the location of the undercover transaction. *Id.* After the first three undercover cocaine sales, the police obtained an arrest warrant for Gallego and a search warrant for 129 Perkins Street, Apartment 7. *Id.* at A87. Officers arrested Gallego after the fourth undercover sale and transported him to the Somerville Police Station, where he was booked in English. *Id.* at A87–A88.

The parties further stipulated that the search of Apartment 7 executed on March 14, 1997 resulted in the seizure of two packages of cocaine weighing 31.71 grams and 2.28 grams; personal paperwork, identification cards, and a Columbia passport bearing Gallego's name and photograph; and other items, including a digital scale, beeper, ink stamp with Gallego's initials, and a box of plastic baggies. *Id.* at A90–A91. Officers later found two more packages of cocaine weighing over 200 grams in the basement. *Id.* at A91–A92. A package of cocaine was also seized from Heriberto Preciado ("Preciado"), also a resident of 129 Perkins Street, Apartment 7. *Id.* at A90. The cocaine seized from Apartment 7, the basement, Preciado, and the March 14, 1997 undercover sale to Trooper Joyce all had similar packaging, and the quantities found in the basement were consistent with intent to distribute. *Id.* at A91–A92.

At the jury waived trial before Superior Court Justice Hiller B. Zobel, Lieutenant John Thomas O'Connor ("Lieutenant O'Connor") testified that he booked Gallego in English after his arrest. Trial Tr., Vol. 2, at 95. He testified that he asked Gallego fifteen to twenty biographical questions, read Gallego his *Miranda* warnings, and informed him of his right to use the telephone. *Id.* at 95, 99. Gallego did not appear to be impaired in any way during the booking process, according to Lieutenant O'Connor. *Id.* at 97–98. He also testified that he had no trouble communicating with Gallego in English, that Gallego never appeared confused, that Gallego responded to all questions in English, and that Gallego never requested a Spanish-language interpreter. *Id.* at 95–96. Lieutenant O'Connor further testified that he later observed Gallego conversing with other troopers in English. *Id.* at 101.

Trooper Brian Connors ("Trooper Connors") testified at trial that after executing the search warrant for Apartment 7, he and Sergeant Steven Matthews ("Sergeant Matthews") went to the Somerville Police Station to conduct a post-arrest interview of Gallego. Trial Tr., Vol. 1, at 107. Both officers were dressed in civilian clothes and had their weapons concealed. *Id.* at 108–09. After being informed by Lieutenant O'Connor that Gallego had been advised of his *Miranda* rights, Trooper Connors testified that he and Sergeant Matthews asked Gallego in English whether he was willing to speak to them regarding the case. *Id.* at 109. Gallego asked if they were attorneys. *Id.* at 110. Trooper Connors responded that they were not attorneys, but rather were the police officers responsible for his arrest. *Id.* at 111. Trooper Connors again asked Gallego whether he was still willing to speak with them. *Id.* According to Trooper Connors, Gallego assented, and he began to interview Gallego in English. *Id.*

Trooper Connors testified that during their conversation, Gallego informed him that he was from Columbia and that he had been in the United States for one year and ten months. *Id.* at 112. Gallego also stated, according to Trooper Connors, that his cocaine supplier was a man named "Robert" and admitted that the cocaine found in the apartment was his. *Id.* at 114–15. When questioned about the cocaine discovered in the basement, Gallego denied any knowledge of it. *Id.* at 116. When asked whether the police would locate his fingerprints on the packaging of the cocaine found in the basement, Gallego responded, "Maybe I touched it." *Id.* at 117. He then explained that on a prior day there had been a package on the table in his apartment and that he had touched it without knowing what it was or who it belonged to. *Id.* Trooper Connors then asked whether the police would find Gallego's fingerprints in the vicinity of where the cocaine was found in the basement. *Id.* at 118. Although Trooper Connors did not tell Gallego that the cocaine was discovered near a wall, Gallego responded that he had been in the basement recently but that he did not touch the walls. *Id.* at 118–19. Trooper Connors went on to testify that Gallego eventually admitted to the officers that he had supplied Preciado with the cocaine seized from him during the March 14 search. Trial Tr., Vol. 2, at 11.

Consistent with Lieutenant O'Connor's testimony, Trooper Connors testified that he had no trouble communicating with Gallego in English during the interview, that he did not feel it necessary to call on a Spanish-language interpreter even though one was readily available, that Gallego never showed any signs of distress, and that Gallego never requested an interpreter. Trial Tr., Vol. 1, at 110–11.

Prior to trial, Gallego had moved to suppress his alleged post-arrest state-

ments to Trooper Connors on the grounds that his inability to understand English prevented him from knowingly, intelligently, and voluntarily waiving his *Miranda* rights. Resp't Supp. Ans. [Doc. No. 6], Ex. 3 at A49, A51–A52. At the hearing on the motion to suppress before Superior Court Justice Charles F. Barrett, Lieutenant O'Connor and Trooper Connors both testified that they had no trouble communicating with Gallego in English, that they did not think an interpreter was called for, and that Gallego never requested an interpreter. Mot. to Supp. Hr'g Tr. at 76–77, 81–83, 87–88, 108–13, 119–20, 123, 125. Gallego submitted an affidavit stating that he was never informed of his constitutional rights and did not waive such rights. Resp't Supp. Ans., Ex. 3 at A50. Gallego's counsel did not present any other evidence on his behalf. Justice Barrett credited the testimony of the officers and denied Gallego's motion to suppress on June 15, 1998. *Id.* at A70–A72.

At the conclusion of the jury waived trial, Justice Zobel found Gallego guilty of one count of trafficking in 200 grams or more of cocaine, a class B substance; two counts of trafficking in more than 28 grams of cocaine; one count of trafficking in more than 14 grams but less than 28 grams of cocaine; and three counts of distribution of cocaine. Trial Tr., Vol. 3, at 61–62. Gallego filed a timely notice of appeal. Resp't Supp. Ans., Ex. 3 at A30.

On August 23, 2000, Gallego moved for a new trial, which Justice Zobel denied without prejudice. *Id.*, Ex. 1 at 12. On October 4, 2000, Gallego re-filed his motion for a new trial, arguing in part that his trial counsel failed properly to prepare and prosecute his pre-trial motion to suppress his post-arrest statements. *Id.*, Ex. 3 at A32, A38–A44. In support of his motion, Gallego submitted an affidavit in Spanish, with an English translation attached, attesting to his inability to speak and understand English. *Id.* at A34–A37. On February 13, 2001, after a non-evidentiary hearing, Justice Zobel denied the motion for a new trial. *Id.* at A79–A83.

Gallego's timely notice of appeal from the order denying the motion for a new trial was consolidated with the direct appeal of his convictions. *Id.*, Ex. 2 at 3. On April 3, 2002, the Massachusetts Appeals Court affirmed Gallego's convictions and denied the motion for a new trial. *Commonwealth v. Gallego*, 54 Mass.App.Ct. 1109, 765 N.E.2d 826 (2002) (unpublished). The court explained:

> We are unpersuaded by the defendant's claim that his trial counsel was ineffective in his representation at the motion to suppress for not offering any affirmative evidence of the defendant's alleged inability to understand English. Our review of the record reveals: a) counsel raised the issue in the affidavit accompanying the motion to suppress; b) both prosecutor and counsel for the defendant vigorously pursued the language issue during the course of the hearing; c) the troopers testified that there was ready access to a Spanish interpreter, but that there was no need for one when they were questioning the defendant; [d]) one of the troopers testified that the defendant was conversing with them "freely" in English; and [e]) counsel for the defendant argued the defendant's alleged language difficulties in his closing argument at the motion hearing. Given the foregoing, the defendant offered nothing in his motion for new trial to establish that his counsel was "manifestly unreasonable" in not presenting further affirmative evidence of his alleged inability to understand English. The trial judge was not required to credit the defendant's self serving affidavit.

*Id.*

On April 23, 2002, Gallego filed an Application for Leave to Obtain Further Appel-

late Review in the Massachusetts Supreme Judicial Court, claiming that the Appeals Court erred in affirming the denial of his motion for a new trial. Resp't Supp. Ans., Ex. 6. His application was denied by the Supreme Judicial Court on June 6, 2002. *Commonwealth v. Gallego,* 437 Mass. 1102, 772 N.E.2d 587 (2002) (unpublished table decision). Gallego then filed a petition for a writ of habeas corpus in this Court on June 6, 2003. His petition raises the same grounds he exhausted in state court, namely that his trial counsel was constitutionally ineffective for failing to present affirmative evidence that would have established that his English-language skills were so deficient as to render him incapable of knowingly, intelligently, and voluntarily waiving his *Miranda* protections. Pet. at 5.

## II. DISCUSSION

Gallego's claims have been exhausted in the state courts and are properly before this Court. Under the standard outlined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court cannot grant habeas corpus relief on the grounds raised by Gallego unless the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA also requires this Court to presume all factual determinations of the state court to be correct. *Id.* § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### A. Ineffective Assistance Of Counsel

■ Gallego claims that his counsel provided him with ineffective assistance, in violation of his Sixth Amendment right to counsel. Pet. at 5. In support of this contention, he argues that his counsel improperly failed to introduce affirmative evidence demonstrating that he did not speak and understand English sufficiently to waive his *Miranda* rights. *Id.* Gallego contends that as a result of this failure, incriminating post-arrest statements made to Trooper Connors were introduced at trial in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id.*

Under the federal standard outlined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Gallego must demonstrate (1) that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) that his counsel's "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. In assessing Gallego's ineffective assistance of counsel claim, the Appeals Court applied a Massachusetts standard that has been held to be the functional equivalent of the *Strickland* standard. *See, e.g., Stephens v. Hall,* 294 F.3d 210, 214–15 (1st Cir.2002). Applying *Strickland's* two-pronged analysis to this case, this Court holds that the Massachusetts Appeals Court's rejection of Gallego's ineffective assistance of counsel claim does not constitute an unreasonable application of clearly established federal law.

First, counsel's decision not to introduce affirmative evidence on the language issue did not amount to serious error. The record shows that counsel vigorously argued the issue at the hearing on the motion to suppress. *See* Mot. to Supp. Hr'g Tr. He properly cross-examined witnesses on the issue, raised the issue in his closing argument, and submitted a supporting affidavit from Gallego. *Id.;* Resp't Supp. Ans., Ex. 3 at A50. Even if some attorneys might have found it prudent to introduce additional evidence in such circumstances, "only the *most inexcusable* [missteps] will

support a finding that counsel's performance was so substandard as to compromise a defendant's Sixth Amendment right." *Ouber v. Guarino,* 293 F.3d 19, 27 (1st Cir.2002) (emphasis added). Counsel's inaction in this case does not rise to such a level.

■ Second, Gallego was not prejudiced by his counsel's decision not to present affirmative evidence in support of his motion to suppress. To prove prejudice under *Strickland,* a petitioner must establish "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Gallego has not shown that the outcome of his motion would have been any different had counsel presented affirmative evidence of his alleged inability to speak and understand English. Even if this Court assumes that some evidence of Gallego's limited English-language skills was readily available to counsel, the testimony of Lieutenant O'Connor and Trooper Connors was still sufficient for Justice Barrett reasonably to conclude that Gallego possessed enough knowledge of the English language to knowingly, intelligently, and voluntarily waive his right to remain silent.

Moreover, even if Justice Barrett would have excluded Gallego's post-arrest statements in the face of such affirmative evidence, there was still sufficient evidence presented at trial for a fact finder reasonably to conclude beyond a reasonable doubt that Gallego possessed the cocaine seized from the basement of his apartment building. The parties stipulated to the fact that Gallego lived at 129 Perkins Street, Apartment 7. Resp't Supp. Ans., Ex. 3 at A84. It was also stipulated that Gallego sold cocaine from 129 Perkins Street to Trooper Joyce on four occasions.

*Id.* at A84–A88. It was further stipulated that the cocaine found in the basement was packaged in a similar manner as the cocaine seized from Gallego's apartment. *Id.* at A91–A92. At trial, Trooper Connors testified that the cocaine seized from the basement was discovered in an unlocked, common basement area. Trial Tr., Vol. 1, at 84–85. Viewed in this context, neither Gallego's vague statement, "Maybe I touched it," nor his statement that he was in the basement on a previous day but did not touch the walls, contributes significantly to the weight of incriminating evidence already stacked against him. Gallego simply has not demonstrated to this Court that the outcome of his trial would have been any different absent his counsel's failure to present affirmative evidence in support of his motion to suppress.

## B. Self–Incrimination

■ Gallego's claim that the introduction of incriminating post-arrest statements violated his *Miranda* rights has been, to a certain extent, embedded within his ineffective assistance of counsel claim. *See* Pet. at 5. Nevertheless, the issue of whether Gallego could voluntarily waive *Miranda* warnings recited to him in English has been discussed on appeal both by Justice Zobel and the Appeals Court. It is, therefore, appropriate to review whether Gallego's convictions were reached in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444, 86 S.Ct. 1602. The defendant can waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

In the absence of any clear and convincing evidence to the contrary, this Court must presume that the factual determinations of the Superior Court are correct, *see* 28 U.S.C. § 2254(e)(1). Justice Barrett, after hearing Gallego's motion to suppress, found the following facts:

> While Lieutenant O'Connor was booking the defendant, prior to any questioning, he advised the defendant of his Miranda rights. At that time, the defendant was not under the influence of alcohol or drugs. Additionally, the defendant had a sufficient command of the English language to be able to understand and converse with Lieutenant O'Connor. The defendant indicated that he understood his rights and that he would speak to the police.
>
> Immediately after the booking procedure, the defendant met with [Sergeant] Matthews and Trooper Connors.... The officers did ask if the defendant had received and understood his Miranda rights and the defendant indicated in English, without any apparent difficulty, that he had. The interview itself was relaxed .... During the course of the interview, the officers did not promise the defendant any rewards, threaten him or raise their voice to him in an attempt to coerce the defendant's cooperation. The entire interview, which lasted about fifty to sixty minutes, was conducted in English and the defendant was able to adequately communicate and respond to the officers.

Resp't Supp. Ans. [Doc. No. 6], Ex. 3 at A71–A72. The only evidence Gallego presents to controvert these findings is his own affidavit and the affidavit of Anthony Annino, Gallego's former court-appointed attorney, stating that he could only communicate with Gallego through a Spanish-language interpreter. *Id.* at A34–A37, A75. This is not nearly sufficient to rebut the Superior Court findings of fact by clear and convincing evidence. Gallego has not persuaded this Court that the Superior Court was incorrect in concluding that Gallego understood enough English to have knowingly, intelligently, and voluntarily waived his *Miranda* rights when he agreed to speak with Sergeant Matthews and Trooper Connors. It is therefore the judgment of this Court that the state court properly admitted Gallego's statements from the interrogation at trial.

## III. CONCLUSION

For the foregoing reasons, Gallego's Petition for Writ of Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254 [Doc. No. 1] is DENIED.

SO ORDERED.